UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHERLYN PATTERSON,

       Plaintiff,

v.                                              Case No.  8:21-cv-359-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

       Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

### I.   Procedural Background

Plaintiff filed applications for a period of disability, DIB, and SSI (Tr. 15). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 143-48, 151-76). Plaintiff then requested an administrative hearing (Tr. 177-78). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 47-71). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

disabled and accordingly denied Plaintiff's claims for benefits (Tr. 12-28). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1973 (Tr. 117), claimed disability beginning December 22, 2017 (Tr. 15). Plaintiff has an eleventh-grade education (Tr. 52) and past relevant work as a security guard (Tr. 22). Plaintiff alleged disability due to a previous Killian operation (a sinus operation); neuropathy in her hands, feet, and legs; vertigo; irritable bowel syndrome ("IBS"); arthritis; and tendonitis (Tr. 85).

In rendering the administrative decision, the ALJ concluded that Plaintiff meets the insured status requirements through December 31, 2023, and, despite having engaged in substantial gainful activity during the period January 2019 through October 2019, had not engaged in substantial gainful activity during a continuous twelve-month period following her alleged onset date of December 22, 2017 (Tr. 17-18). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: diabetes mellitus with neuropathy and vertigo, degenerative joint disease and status post-repair of the right knee, and degenerative disc disease (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to

perform light work as defined in 20 C.F.R.§§ 404.1567(b) and 416.967(b), with these limitations:

> [She has] the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours; and stand and/or walk for 6 hours. She can frequently climb ramps and stairs but can never climb ladders, ropes, or scaffolds. She can never work at unprotected heights or around moving, mechanical parts. She must avoid concentrated exposure to extreme cold and working in or around vibration. She must avoid hazards in the workplace, such as heights and heavy moving machinery.

(Tr. 20). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as a security guard (Tr. 22). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (*Id.*).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment"

is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV. Analysis**

Plaintiff argues the ALJ erred in assessing her complaint that she must frequently use the restroom due to IBS.[2] The Commissioner responds that substantial evidence supports the ALJ's consideration of Plaintiff's subjective symptoms and limitations.

---

[2] At step two, the ALJ did not list IBS as one of Plaintiff's severe impairments (Tr. 18), a finding Plaintiff does not challenge.

The Eleventh Circuit has crafted a pain standard to apply to claimants who attempt to establish disability through their own testimony of subjective complaints. The standard requires evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991). When the ALJ decides not to credit a claimant's testimony as to his pain, he must articulate explicit and adequate reasons. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). "Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Id.* at 1562.

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate, are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. §§ 404.1529, 416.929. "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1513, 416.913. Subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

In this matter, the ALJ relied on largely boilerplate language in assessing Plaintiff's subjective pain complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they fail to comport with the objective medical evidence of record.

(Tr. 21). This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013).

Here, Plaintiff testified:

> I have IBS. . . . And that is a condition where I can't control my bowels. And if I'm working somewhere and I – there's no way that I – I have to go on a[n] instant. I don't know when it's going to happen. I could be fine, and all of a sudden, you know, [I] think I have to pass gas but it's not gas. I have, you know, bowel movements. And at night I can't control my bowel movements. I have to wear Depends. And I can't control my bowels at all, you know, so I have accidents at night in my sleep, you know. Yes, that's IBS. It's terrible.

(Tr. 55). The ALJ acknowledged Plaintiff's testimony: "[T]he claimant testified that she cannot control her bowels and must go instantly. However, primary care notes suggest that she has not experienced incontinence as a result of irritable bowel syndrome. (Exhibits 9F and 12F)." (Tr. 21). The substantial evidence summarized below supports this finding.

In August 2018, Plaintiff asked nurse practitioner Joseph Ofei of Tampa Family Health Center for a referral to a gastroenterologist for what she said was a recent onset of

7

IBS symptoms (Tr. 987-88).³ She reported no abdominal pain, nausea, or constipation (Tr. 987). Next, in January 2019, Plaintiff had a follow up with Tampa Family Health Center nurse practitioner Taneisha Battles for medication refills (Tr. 964). Plaintiff had gained three pounds, but "continu[ed] to have diarrhea given her IBS history." (Tr. 968). She had "frequent diarrhea, but reports no abdominal pain, no nausea, no vomiting, and no constipation. . . . She reports no incontinence and no difficulty urinating." (*Id.*). Her bowel sounds were normal with no abdominal bruit (a vascular sound associated with turbulent blood flow) (*Id.*). In June 2019, Donia Dobson, D.O. of Tampa Family Health Center examined Plaintiff (Tr. 1068). Plaintiff did not complain of diarrhea. Dr. Dobson noted Plaintiff had "no abdominal pain, no nausea, no vomiting, and no constipation. She reports no incontinence and no difficulty urinating." (Tr. 1072). Her assessment was IBS without diarrhea. She referred Plaintiff to a gastroenterologist, but there is no record of Plaintiff following up (Tr. 1072-73).

Next, on October 1, 2019, Eniola Owi, M.D. performed a consultative examination of Plaintiff at the agency's request (Tr. 1030-32). Dr. Owi reviewed the treatment records from Ms. Battles and Tampa Family Health Center and wrote: "[Plaintiff] reports she was diagnosed with IBS in 2017 by a GI specialist and placed on Flexeril, Baclofen, and Omeprazole. [She has s]ome bottles of medication from 2017 or later with most of [the] pills still present even though she states she is taking as prescribed. She states medications are not helpful. She complains of abdominal rumbling, inability

---

³ Plaintiff had an appointment with Mr. Ofei the week before, on August 13, 2018 (Tr. 991). She did not mention IBS symptoms at that appointment (*Id.*).

to pass gas, and fecal incontinence." (Tr. 1030). He noted Plaintiff's "history of IBS," but made no specific observations or findings regarding the impairment other than to note Plaintiff's abdomen was "soft, nontender, nondistended, no masses palpable." (Tr. 1031).

Plaintiff visited Ms. Battles again in February 2020 for a blood pressure check (Tr. 1050). The nurse practitioner's treatment notes list IBS as one of Plaintiff's "Reviewed Problems," with an onset date of August 2018 (Tr. 1053). Plaintiff reported no weight loss or increased urination but complained of "IBS and having nausea and vomiting since December." (Tr. 1055). She had frequent diarrhea but no abdominal pain, no constipation, no difficulty urinating, and no incontinence (*Id.*). Ms. Battles noted Plaintiff had undergone an upper GI endoscopy the previous day (*Id.*).[4] Finally, in June 2020, Ms. Battles saw Plaintiff for a follow-up appointment and diabetes check. Although Plaintiff complained of frequent diarrhea, she had gained 11 pounds since her last visit and still had not followed up on the clinic's referral to a gastroenterologist. (Tr. 1048-49).

According to Plaintiff, the repeated mention in her Tampa Family Health Center treatment records of "no incontinence" means she had no urinary incontinence (Doc. 26 at 13-15). She emphasizes that the phrase "no incontinence" is always followed by "and no difficulty urinating" (*Id.*; *see* Tr. 968, 979, 1048, 1055, 1066, 1072, 1082). Considering that these same records include a separate sentence pertaining to her gastrointestinal symptoms (*see, e.g.,* Tr. 968 ("Patient reports frequent diarrhea but reports no abdominal pain, no nausea, no vomiting, and no constipation.")), Plaintiff makes a point. However, Plaintiff also argues she is not completely incontinent; she just needs quick access to a

---

[4] The results of this are not in the record and neither party mentions this test.

9

restroom to avoid accidents (Doc. 26 at 15). This is not her testimony. Instead, she testified she cannot control her bowels and must wear Depends. She described her IBS as "a condition to where [she] can't control [her] bowels . . . [she] can't control [her] bowels at all." (Tr. 55).

Additionally, although Plaintiff complained of frequent diarrhea to her treatment providers, she never mentioned uncontrollable accidents. In fact, the only reference to "fecal incontinence" in the medical evidence is Plaintiff's comment to consultative examiner Dr. Owi in October 2019, almost two years after her alleged onset date (Tr. 1030). During the examination, Dr. Owi observed that Plaintiff was not taking her IBS medications as prescribed. And on three occasions treatment providers assessed Plaintiff as suffering from IBS *without* diarrhea (Tr. 988, 1049, 1072). Finally, Plaintiff worked as a part-time security guard during some of the relevant period (January 2019 through October 2019), a fact that undermines her testimony she had uncontrollable bowel movements and required quick access to a bathroom. Indeed, Plaintiff testified she left her security guard job because of her blurred vision, not her IBS symptoms (Tr. 59).

Substantial evidence supports the ALJ's finding that the medical evidence "suggest[s] that [Plaintiff] has not experienced incontinence as a result of irritable bowel syndrome." (Tr. 21). The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains substantial evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words,

the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). On this record, the ALJ did not err in assessing Plaintiff's subjective complaints of irritable bowel syndrome.

### V.     Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.
2. The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on August 1, 2022.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE